| HUSTON *against* SPRINGER.

IN ERROR.

*J. H.* a tenant in common with *D. S.* of a forge, leases his share to *J. S.*, the son of *D. S.*, and in the lease it is agreed "that considerable new work and repairs must be done to the forge, such as roofing, and repairing the fore-bay and trunks; and also the hammer and bellows wheels, so far as may be agreed on by *D. S.* and *J. H.;* the expense of which repairs is to be kept correctly and particularly by *J. S.:* and the said *J. H.* agrees to discount out of the rent one half of such expense, provided it should not exceed the sum of one hundred and eighty dollars in any one year: and the said *J. S.* is to keep the said forge in good, tenantable repair during the said term, and at the expiration thereof, give up peaceable possession of the forge and premises, being the undivided half, to the said *J. H.*" *Held*, that the lessee was not bound, in the event of *D. S.* not agreeing to essential repairs of the kind particularly mentioned, to make them at his own expense, under the covenant to keep the premises in tenantable repair, but was entitled to contribution for so doing.
But such contribution is a personal charge against the co-tenant, and not a lien on the profits in the hands of his successor.

WRIT of error to the Court of Common Pleas of *Fayette* county. Amicable action in account render.

The plaintiff, *John Huston*, declared against the defendant, *Jacob Springer*, in the usual form of one tenant in common against another. The defendant pleaded, fully accounted and payment, with leave to give the special matter in evidence. Replication, that the defendant has not fully accounted, *non solvit* and issues. The following facts were agreed upon by the parties to be considered as a special verdict:

On the 1st of *March*, 1798, *Joseph Huston* and *Dennis Springer* were seised in their demesne as of fee, as tenants in common, of fifty-one acres of land in *Union* township, *Fayette* county, adjoining lands of the said *Joseph Huston* and *Dennis Springer*. Upon this undivided property they erected a forge for making iron, a grist mill, dwelling-houses, barn, stables, coal-house, blacksmith shop, and a variety of other buildings for the accommodation of their forge and establishment.

On the 11th of *April*, 1822, *Joseph Huston* leased his undivided moiety of the said premises to *Jacob Springer*, the defendant, for the term of two years from that date, for the rent of three tons of merchantable bar iron, payable half yearly at the forge. In the said lease from *Joseph Huston* to the defendant there was contained the following provisions: " Whereas considerable new work and repairs must be done to the forge, such as roofing, and repairing the forebay and trunks; and also the hammer and bellows wheels, so far as may be agreed on by *Dennis Springer* and *Joseph Huston;* the expense of which repairs and new work is to be kept cor-

(Huston *v.* Springer.)

rectly and particularly by *Jacob Springer:* and the said *Joseph Huston* agrees to discount out of the rent one half of such expense, provided it should not exceed the sum of one hundred and eighty dollars in any one year: and the said *Jacob Springer* is to keep the said forge in good, tenantable repair during the term, and at the expiration thereof, give up peaceable possession of the forge and premises, being the undivided half or moiety, to the said *Joseph Huston.*"

*Dennis Springer* died on the 3d of *April,* 1823. His will contained the following provision: "My undivided half of *Union* forge, my desire is, that my sons *Uriah, Dennis,* and *Josiah Small,* shall each receive from the rents, issues, and profits thence arising, two hundred dollars, in three equal annual payments, the residue of the said forge to be equally divided between my sons *John* and *Jacob:*" which *Jacob* is the defendant in this case.

On the 8th of *March,* 1823, the said forge became so dilapidated, by the walls and roof falling, that it was no longer tenantable. *Jacob Springer,* the defendant, who was now joint owner with *John Springer* of the moiety which had belonged to his father, *Dennis Springer,* deceased, applied to *Joseph Huston* to know his mind about rebuilding the forge. To this application *Joseph Huston* replied, that in the then circumstances and situation of his affairs, he must decline doing any thing towards rebuilding the forge; that he supposed all he had would soon be sold by the sheriff. In *September, Jacob Springer* proceeded to rebuild the forge, and made such repairs as were necessary to put the forge in operation, which he effected on the 1st of *February,* 1824.

On the 8th of *June,* 1815, the bank of *Washington* obtained a judgment against *Joseph Huston,* which operated as a lien on the interest of *Joseph Huston* in the said fifty-one acre forge and improvements with the appurtenances, and continued a lien until the said premises were levied on under it, and sold on the first Monday of *March,* 1824, to *John Huston,* the plaintiff. *Joseph Huston* died on the 7th of *March,* 1824, and on the 1st of *June,* 1824, a deed for the said premises was acknowledged by the sheriff and delivered to the plaintiff, by virtue of which he entered into possession thereof, and claimed the one moiety of the profits from that date: but *Jacob Springer,* the defendant, by virtue of the title derived under the will of *Dennis Springer,* and the rights incident thereto, has continued to receive the whole of the rents, issues, and profits up to the commencement of this suit, and has refused to pay over any part thereof to the plaintiff; but has applied them to the extinguishment of the expenses incurred in rebuilding the forge, &c., which has consumed the whole amount.

If, upon the above statement of facts, the court shall be of opinion with the defendant, the judgment to be entered for the defendant: but if the court shall be of opinion with the plaintiff, then judgment *quod computet* to be entered for the plaintiff; and it is

(Huston *v.* Springer.)

agreed that the amount due to the defendant shall be ascertained by *Samuel Cleavenger* and *Ephraim Douglass,* Esqrs., and *Hugh Campbell,* M. D.

The court below gave judgment for the defendant.

*Ewing,* for the plaintiff in error.

1. The defendant was bound to make the repairs as tenant of *Joseph Huston. Styles,* 162. *Dyer,* 33. *Com. Rep.* 627. *Perkins,* 738. 2 *Saund.* 420. The case in 1 *Dall.* 210, went on the ground that the destruction arose from the act of a public enemy. 13 *Serg. & Rawle,* 39. *Johns.* 44. Destruction of the premises will not excuse payment of the rent. 3 *Call.* 309. 2 *Hen. & Munf.* 408. 16 *Mass.* 238. 6 *Mass.* 63.

2. *Joseph Huston* could not be compelled to contribute for repairs or join in them. Tenants in common are compellable to repair only in cases of houses, castles and mills. 11 *Co.* 82, *b.* 2 *Inst.* 403. 4 *Mass.* 475.

3. But liens are to be paid out of the purchase money. 7 *Serg. & Rawle,* 80. 3 *Binn.* 358. 14 *Serg. & Rawle,* 257, 262. The expenses of a lien ought not to be paid by the purchaser at sheriff's sale. If no lien, they were a personal charge against him who was a tenant in common when the expenses were made. We say it was a personal charge. 4 *Johns. Ch.* 334. 12 *Mass.* 65.

*Baldwin, contra,* was desired to speak only to the last two points. There was no agreement to be bailiff. Does the relation arise by the operation of law? An action did not lie between tenants in common at common law. If *Springer* is entitled to indemnity, he has received no profits till the repairs are indemnified to him. *Co. Litt.* 200, *b.* 1 *Roll. Abr.* 117, *b.* 1 *Com.* 115. 4 *Stat. at large, sect.* 27, *vol.* 4, 208. *Willes, Rep.* 208. 12 *Mass.* 149. It is not material whether there is a lien. One joint owner may repair and take it out of the profits. In case of the death of one, would not his heir be liable to contribute? In repairs made to ships, the partner making the repairs can hold till reimbursed. 9 *Serg. & Rawle,* 97. A tenant is reimbursed against a purchaser at sheriff's sale. 3 *P. Wms.* 158. 6 *Binn.* 193. 7 *Serg. & Rawle,* 438. These cases show that this was partnership property, and that a lien arose from the nature of the property. So 20 *Johns.* 620. *Abbot on Shipping,* 60. 1 *Ves.* 497. 2 *Ch. Ca.* 36. *Amb.* 255. *Skin.* 230. 8 *Johns. Ch.* 407, 8. 7 *Serg. & Rawle,* 411. 12 *Mass.* 65. No action of account will lie before demand and refusal.

*Kennedy,* in reply.—The case of ships is peculiar, 15 *Johns.* 159, 4 *Mass.* 424, 11 *Mass.* 469; that of joint owners of chattels is different.

The opinion of the court was delivered by

GIBSON, C. J.—*Joseph Huston,* the uncle of the plaintiff, and *Dennis Springer,* the father of the defendant, were tenants in common of a forge; and this action is brought to have an account

(Huston *v.* Springer.)

of the profits from the time when the plaintiff acquired the estate
of his uncle.    The defendant claims a right to defalcate certain expenses incurred by him before that time in repairs; for which, he
alleges, he ought to have contribution.    The plaintiff alleges that
the defendant was bound, by the terms of a lease from *Joseph Huston*, to make these repairs at his own cost; that if this were otherwise, yet the expense was a personal charge against *Joseph Huston*, and, further, that if it were a charge on the property, it ought
to have been paid out of the purchase money in the hands of the
sheriff.

In the lease it was agreed that " considerable new work and repairs must be done to the forge, such as roofing, and repairing the
forebay and trunks; and also the hammer and bellows wheels, *so
far as may be agreed on by Dennis Springer and Joseph Huston;* the expense of which repairs is to be kept correctly and particularly by *Jacob Springer:* and the said *Joseph Huston* agrees
to discount out of the rent one half of such expense, provided it
should not exceed the sum of one hundred and eighty dollars in
any one year: *and the said Jacob Springer is to keep the said
forge in good, tenantable repair during the said term,* and at
the expiration thereof, give up peaceable possession of the forge or
premises, being the undivided half or moiety, to the said *Joseph
Huston.*"

When the repairs were made, *Dennis Springer* was dead; so
that the defendant held the one moiety as a tenant in common, and
the other as the lessee of his co-tenant.    And the first question is,
whether he was entitled to contribution from his co-tenant, or bound
to repair at his own cost, by force of the covenant to keep the forge
" in good, tenantable repair."

We are happily relieved, by the terms of the agreement, from
an examination of those hard cases, in which it has been held that
the lessee is bound to rebuild, if necessary, where he has covenanted to repair, and deliver up the premises in as good condition as
when he obtained the possession.    Perhaps there is no relief against
an undertaking so positive and unequivocal.    But in this species of
contract, as in every other, the intention is to govern.    Here, then,
there was no covenant to redeliver the premises in good repair.
There was a covenant for tenantable repair; but did the parties, by
this, contemplate any thing more than *ordinary* repairs, which
should become necessary by natural wear and decay *within* the
term?    Whatever doubt might otherwise rest on their intention, is
removed by their having, on certain conditions, provided for *extraordinary* repairs, rendered necessary by wear and decay *previous* to the term; which would have been superfluous, had they
intended to provide for them by the words " tenantable repair."
These extraordinary repairs were designated by way of example,
as " roofing, and repairing the forebay and trunks; and also the hammer and bellows wheels:" all of which are generically, and one of

(Huston *v.* Springer.)

them specifically, the same as the repairs since made; which, had they been made by the direction of *Joseph Huston* and *Dennis Springer*, would, undoubtedly, have been within the terms of the agreement and payable out of the rent.　The existence of an agreement specifically applicable to them, then, shows that the parties themselves did not view them as included in the general covenant for tenantable repair.　They had a right to put their own construction on their contract; and where their meaning is evident from the whole, it will qualify general expressions in a particular part.

The contribution demanded is, for new walls and a new roof; and hence a doubt whether the forge was repaired or rebuilt; and, if the latter, whether a tenant in common can compel his co-tenant to rebuild.　The expense, however, was incurred clearly in repairs. A forge essentially consists of its wheels, hammers, drum-beam, furnaces, and bellows.　The walls and roof are a mere shed, and constitute so small a part of the cost, that no proprietor would hesitate to replace them, rather than abandon the business and sacrifice the capital invested in other parts of the stock.　I have known a conflagration of the walls and roof suspend the operations of a forge but a few days.　But the works consist of many other buildings, and capital is invested in various sorts of stock which could be employed in no other business.　I should therefore say, the reconstruction of a forge, entire, would constitute repairs for which contribution would lie.　It would seem, then, that these repairs were provided for only conditionally; and that as the condition on which the provision was to take effect, has not happened, they stand as if no provision had been made.　The consequence is, that the objection to contribution, on this ground, is not sustained.

A more material inquiry is, whether the right of contribution be a personal charge against the co-tenant, or a lien on the profits of his successor.　The writ *de reparatione facienda*, which lay at the common law, necessarily affected only the person of him who happened to be co-tenant when the repairs were to be made: and the modern remedy by bill in equity, I believe, goes no further. There are, undoubtedly, liens which do not exist at law, and of which equity alone can take cognizance; but no case can be shown where a tenant in common has been allowed to retain out of the profits that accrued after new parties had intervened.　The only case that gives colour to the existence of a lien, under any circumstances, is *Scott* v. *Nesbitt*, (14 *Ves.* 143,) which involved transactions almost purely commercial.　On the ground of a supposed usage, peculiar to *Jamaica*, Lord ELDON, at first, expressed an opinion that supplies furnished to a *West India* estate, would give a claim against the estate itself; which he retracted on the coming in of the master's report, which negatived the existence of any such usage.　Still, however, he said the principle was, he thought, applicable to a species of landed estate even in *England*, which could not well be represented as mere landed property; as, for instance,

(Huston *v.* Springer.)

soil containing mines or alum works, in the management of which there must be expenditure incurred as between the tenants; and he thought chancery would not give an account between them, without making allowances that would not be given in the case of an estate managed in the ordinary course of husbandry. These are nearly his words; from which, it is plain, he thought that no lien can arise from the naked relation of tenure in common; but that where the tenants carry on a business to which the ownership of the soil is subservient, expenditure on the land, by one, ought to be reimbursed out of the profits: in other words, that the relation of tenants in such circumstances, partakes of the nature of partnership; and it is clear that profits are not to be divided till the debts are paid, whether owing to the partners individually or to strangers. But here there was no business carried on jointly; and therefore the foundation of the principle fails. But, in any event, a lien could exist only between the tenants themselves, and in respect of profits made while they were associated in business. To affect a stranger to their transactions, would be unjust in the extreme. But where there was no joint business, a lien, against any one, has never been imagined. The responsibilities of joint owners of ships are regulated by principles peculiar to the maritime law. Such a lien, being secret and of indefinite continuance, would be intolerably mischievous and inconsistent with the scope of our legislation in favour of purchasers: and that no case is to be found in which it has been asserted, much less sustained, ought to be decisive against the recognition of it.

This decision of the principal point, renders a decision of the remaining one, unnecessary.

Judgment reversed, and judgment *quod computet;* the amount to be ascertained according to the agreement of the parties.