**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Pemba Rita SHERPA, Defendant–Appellant, Cross–Appellee.**

**Nos. 95–50007, 95–50054.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1996.

Decided Oct. 8, 1996.

As Amended on Denial of Rehearing and Rehearing En Banc March 5, 1997.

Maria E. Stratton, Federal Public Defender, and Michael Tanaka, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant, cross-appellee.

Becky S. Walker and Aaron S. Dyer, Assistant United States Attorneys, Los Angeles, CA, for plaintiff-appellee, cross-appellant.

## ORDER

March 5, 1997

The opinion filed in this case at 97 F.3d 1239 (1996), is amended as follows:

The panel constituted above has voted to deny the petitions for rehearing. Judge T.G. Nelson has voted to reject the suggestions for rehearing en banc and Judge Wallace and Judge W.D. Browning so recommend.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R.App.P. 35.

With the exception of the amendments listed above, the petitions for rehearing are denied and the suggestions for rehearing en banc are rejected.

Before: WALLACE and T.G. NELSON, Circuit Judges, and BROWNING,* District Judge.

T.G. NELSON, Circuit Judge:

Pemba Rita Sherpa, a native and citizen of Nepal, was convicted by a jury of possession of heroin with intent to distribute and of importation of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 952(a). The district court reduced Sherpa's sentence pursuant to the "safety valve" provision of the Mandatory Minimum Sentencing Reform Act of 1994 ("MMSRA"), 18 U.S.C. § 3553(f), codified in the sentencing guidelines at § 5C1.2. Sherpa appealed his conviction[1] and the Government cross-appealed the district court's application of the "safety valve" provision. We have jurisdiction pursuant to 18 U.S.C. § 3742, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Pemba Rita Sherpa ("Sherpa") was born in 1956 in Phortze, a small and rather primitive village in Nepal. All the people born in this area of Nepal have the surname "Sherpa." Sherpas are known for their skills as trekkers, or "high altitude porters." Trekkers' responsibilities include carrying loads and blazing trails for climbers on mountain expeditions. The defendant was a professional trekker who led tourists on climbs most re-

cently in the mountains near Kathmandu. Off-season, he farmed potatoes with his family in Phortze.

Sherpa testified that he was approached during the off-season by one Pujung Grung ("Pujung") in a bar in Kathmandu. Pujung was apparently looking for a "Sherpa" to transport a suitcase for him from Thailand to the United States. He asked Sherpa if he had a passport, and Sherpa told him that he did. Pujung gave him a telephone number, and Sherpa called him. Pujung asked Sherpa to give him his passport and offered to pay him approximately $6,000 plus travel expenses to carry the case, explaining that he had no passport of his own and could not travel. Sherpa testified that after Pujung gave him tea at his home, in the presence of his (Pujung's) wife, he was sure that the man's intentions were honorable, and he agreed to give Pujung his passport and make the trip to the United States.

Pujung provided Sherpa with travel documents and told him to go to the Taipei Hotel in Bangkok, where he would be met by an unidentified man with an empty suitcase. Sherpa was then to take the case to the Garden Hotel in New York City and call Pujung for further instructions. Sherpa went to the Taipei Hotel and was met by a man with a suitcase, who instructed Sherpa to pack his own belongings in the case, a hardsided model containing three mothballs. The parties dispute whether Sherpa told customs agents at Los Angeles International Airport ("LAX") that he thought the suitcase was unusually heavy.

Sherpa arrived at LAX on July 2, 1994, where he was detained and searched by customs agents after a computer "lookout" identified him as a potential narcotics smuggler. The agents searched, x-rayed, and finally drilled a hole in Sherpa's suitcase, which was found to contain three kilograms of 87% pure heroin, worth about $82,500 wholesale and $3.6 million retail.

Sherpa was arrested and given a *Miranda* warning by Special Agent Sene Tchen. Sherpa agreed to speak to Tchen without an attorney present and signed a waiver of the

---

* Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation.

1. We affirmed Sherpa's conviction in a separate unpublished disposition.

rights form. Sherpa then told Tchen in English the story of his meetings with Pujung Grung and his receipt of the suitcase as outlined above.

After a trial held September 21–23, 1994, the jury found Sherpa guilty on both counts of the indictment. The district court sentenced Sherpa to seventy-eight months, rather than the ten-year mandatory minimum sought by the Government. The court reduced Sherpa's sentence by four offense levels for minimal role and held the mandatory minimum inapplicable pursuant to the "safety valve" provision of the Mandatory Minimum Sentencing Reform Act of 1994, 18 U.S.C. § 3553(f), and U.S.S.G. § 5C1.2. The court declined to make an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. The Government does not dispute the adjustment for minimal role, but timely appeals the district court's application of the safety valve statute.

## ANALYSIS

We review *de novo* the district court's interpretation and application of 18 U.S.C. § 3553(f). *United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir.1996). "However, we review for clear error the district court's factual determination that a particular defendant is eligible for relief under § 3553(f)." *Id.; see United States v. Acosta–Olivas*, 71 F.3d 375, 378 n. 3 (10th Cir.1995).

The only issue to be decided here is whether the district court clearly erred in determining that Sherpa qualified for relief under the provisions of subsection (5) of MMSRA, 18 U.S.C. § 3553(f), also known as the "safety valve" provision. Section 3553(f) appears in the sentencing guidelines at § 5C1.2.

■ Section 3553(f) allows the sentencing court to disregard the statutory minimum in sentencing first time, nonviolent drug offenders who played a minor role in the offense and who "have made a good-faith effort to

cooperate with the government." *See United States v. Arrington*, 73 F.3d 144, 147 (7th Cir.1996) Specifically, § 3553(f) provides that a court shall impose a sentence without regard to any statutory minimum if:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

The parties agree that Sherpa qualifies under the first four requirements. The district court found that Sherpa qualified under the fifth as well because he cooperated with the customs agents, providing names and details about his contacts in Kathmandu and Bangkok which were corroborated by other sources.[2] Moreover, the court found that Sherpa's story was consistent:

Mr. Sherpa has maintained his innocence from the beginning. It's been based on his statement from the very beginning that he did not know what was in the suitcase, and which he repeated here at trial. And the jury found to the contrary based upon

2. Four Nepalese, including Sherpa and Prakash Man Shrestha, *see United States v. Shrestha*, 86 F.3d 935 (9th Cir.1996), have been arrested for bringing heroin into the United States. While there is no evidence of conspiracy among the

couriers, the Government believes the drugs are from a single source. The corroborating information to which the district court referred was provided by the other Nepalese couriers.

circumstantial evidence. That was a jury finding which I think was supported by sufficient circumstantial evidence that really can't be questioned here, at least not today.

[GER 186.]

■ Prior to Congress's enactment of the safety valve, 18 U.S.C. § 3553(f), departure below the statutorily prescribed mandatory minimum sentence for certain drug related offenses was available only under the provision for substantial assistance to authorities, 18 U.S.C. § 3553(e). *United States v. Ajugwo,* 82 F.3d 925, 926 (9th Cir.1996). A district court may only consider granting relief for substantial assistance upon a motion by the prosecutor. *Id.;* 18 U.S.C. § 3553(e); *United States v. Ivester,* 75 F.3d 182, 185 (4th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 2537, 135 L.Ed.2d 1060 (1996).

In enacting § 3553(f), Congress recognized that "more culpable defendants who could provide the Government with new or useful information about drug sources fared better under § 3553(e) than lower-level offenders, such as mules, who typically have less knowledge." *Ajugwo,* 82 F.3d at 926. As the legislative history to MMSRA states: "Ironically, [ ] for the very offenders who most warrant proportionally lower sentences-offenders that by guideline definitions are the least culpable-mandatory minimums generally operate to block the sentence from reflecting mitigating factors." H.R.Rep. No. 103–460, 103d Cong., 2d Sess., 1994 WL 107571 (1994).

■ Under the safety valve provision, the judge, without the threshold requirement of a motion by the prosecutor, can-indeed must-depart from the mandatory minimum sentence if he or she determines that the offender "played a minor role in the offense and ... 'made a good-faith effort to cooperate with the government.'" *See Ajugwo,* 82 F.3d at 926 (citations omitted); 18 U.S.C. § 3553(f).

■ Here, as discussed, the Government challenges the district court's finding on subsection (5) only, arguing that the jury's guilty verdict precludes any notion that Sherpa truthfully provided "all information" he had concerning the offense. The Government contends that the jury's guilty verdict legally forecloses any possibility that Sherpa's consistent profession of ignorance (regarding the presence of drugs in the suitcase) was based in truth. Alternatively, the Government contends that the district court's finding is clearly erroneous. We disagree with both of these contentions.

■ Subsection (5) has been termed a "tell all you can tell" requirement, mandating that Sherpa provide (prior to sentencing) all information at his disposal relevant to the offense, whether or not it is useful to the Government. *United States v. Shrestha,* 86 F.3d at 939. This, of course, encompasses Sherpa's role in the offense, including whether he knew that there were drugs secreted in the suitcase-such knowledge being an element of the offense charged. *See United States v. Davila–Escovedo,* 36 F.3d 840, 843 (9th Cir. 1994), (discussing knowing possession element of offense under 18 U.S.C. § 841(a)), *cert. denied,* — U.S. —, 115 S.Ct. 953, 130 L.Ed.2d 896 (1995). An adverse defense finding by a jury, however, does not necessarily foreclose relief pursuant to § 3553(f), even if the defendant continues through and beyond sentencing to maintain his innocence as to one or more of the elements of the underlying offense.

Section 3553(f) requires a determination by the judge, *not the jury,* as to the satisfaction of the five underlying criteria. This is no accident. The judge is privy to far more information than the jury and is therefore in a much different posture to assess the case and determine whether the defendant complies with § 3553(f). Such information potentially includes statements made by a defendant who chose not to testify at trial but did so at sentencing or at pretrial hearings; the existence of witnesses, evidence, and testimony unpresented to the jury for whatever reasons; and the opportunity to observe a defendant many times, possibly over a period of months, in a host of circumstances apart from the stressful proceedings surrounding a criminal trial. It is irrefutable that a judge's access to information at sentencing is considerably less constrained than a jury's at trial. *See, e.g.,* 18 U.S.C. § 3661 (use of information at sentencing); Fed.R.Evid. 1101(d)(3) (rules

of evidence do not apply at sentencing); *United States v. Fernandez–Vidana,* 857 F.2d 673, 675 (9th Cir.1988) (hearsay may be considered at sentencing).

■ At some point, a judge's disagreement with a jury finding may reach a level that implicates the propriety of the verdict. Should this occur, a judge may set a verdict aside and enter a judgment of acquittal. *See* Fed.R.Crim.P. 29(c); *Carlisle v. United States,* —— U.S. ——, —— n. 3, 116 S.Ct. 1460, 1465 n. 3, 134 L.Ed.2d 613 (1996) (noting the appropriateness of inviting timely Rule 29 motions following a jury verdict); *see also* Fed.R.Crim.P. 33 (new trial); *United States v. Young,* 17 F.3d 1201, 1205 (9th Cir.1994) (remanding for a new trial, pursuant to Fed.R.Crim.P. 33, in the interest of justice). But a trial judge cannot set aside a verdict just because he or she personally disagrees with a jury's finding. To set a verdict aside and enter a judgment of acquittal, a trial judge must find that the evidence adduced at trial was insufficient for *any* rational trier of fact to find the defendant guilty beyond a reasonable doubt. *See Rhoden v. Rowland,* 10 F.3d 1457, 1461 (9th Cir.1993) (sufficiency of the evidence standard); *United States v. Mundi,* 892 F.2d 817, 820–21 (9th Cir.1989) (Rule 29 motions employ same standard as sufficiency of evidence), *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991); *United States v. Love,* 746 F.2d 477, 479 (9th Cir.1984) (same). A judge, therefore, could logically find that reasonable minds might differ on a given point so as to preclude a judgment of acquittal, but conclude that *he or she* would have voted differently had he or she been a juror. While the judge's personal disagreement has no impact on the jury's finding of guilt, we hold that such disagreement is properly considered in the judge's sentencing decision.

In *United States v. Brady,* 928 F.2d 844, 850–52 (9th Cir.1991), *abrogated on other grounds by Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), we reached a different conclusion, holding that a judge may not at sentencing reconsider facts that have been necessarily rejected by the jury's not guilty verdict. To reach this decision, we "define[d] one more category of facts that cannot be used by a district court in imposing sentence, i.e. facts that have been rejected by a jury's not guilty verdict." *Id.* at 851 n. 12. We now hold that the approach we took in *Brady* is overruled by the Supreme Court's decision in *Koon v. United States,* —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

In *Koon,* the Supreme Court made it clear that courts may not define facts relevant to sentencing beyond those identified in the guidelines: "a federal court's examination of whether a factor can ever be an appropriate basis for departure is *limited to determining whether the Commission has proscribed, as a categorical matter,. consideration of the factor.*" *Id.* at ——, 116 S.Ct. at 2051 (emphasis added). The Court explained:

> The Guidelines [ ] "place essentially no limit on the number of potential factors that may warrant departure." *Burns v. United States,* 501 U.S. 129, 136–137, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991). The [Sentencing] Commission set forth factors courts may not consider under any circumstances but made clear that with those exceptions, it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." 1995 U.S.S.G. ch. I, pt. A, intro. comment. 4(b). *Thus, for the courts to conclude a factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission.*

*Id.* at ——, 116 S.Ct. at 2050 (emphasis added). Congress instructed the Commission, not the courts, to identify facts relevant to sentencing. *Id.* at ——, 116 S.Ct. at 2051. Our role is "limited to determining whether the Commission has proscribed, as a categorical matter, consideration of [a particular] factor." *Id.* We therefore acted beyond our authority when we declared in *Brady* that district courts, at sentencing, may not reconsider facts necessarily rejected by a jury's verdict.

The Supreme Court's emphasis, in *Koon,* upon the deference due the sentencing judge, *id.* at —— —— ——, 116 S.Ct. at 2046–48, reflects the long-standing tradition that sentencing is the province of the judge, not the jury. *See United States v. Frank,* 956 F.2d

872, 879 (9th Cir.1991) (" 'It is axiomatic that it is the exclusive function of juries to determine whether defendants are guilty, and of the court to determine matters of punishment,' " quoting United States v. Davidson, 367 F.2d 60, 63 (6th Cir.1966)), cert. denied, 506 U.S. 932, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992); United States v. Wilson, 506 F.2d 521, 522 (9th Cir.1974) ("The jury's the law to determine guilt; the judge imposes sentence.");[3] see also United States v. Bay, 820 F.2d 1511, 1514 (9th Cir.1987) ("punishment should fit the offender and not merely the crime"); United States v. Morgan, 595 F.2d 1134, 1136 (9th Cir.1979) (punishment should be tailored to the criminal rather than the crime).

In light of the Court's decision in Koon, we have no difficulty holding that a district court may reconsider facts necessary to the jury verdict in determining whether to apply the safety valve provision of the guidelines.

After the original filing of our opinion in this case, and while the parties' petitions for rehearing were pending, the Supreme Court consolidated and decided the cases of United States v. Watts and United States v. Putra, ⸺ U.S. ⸺, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). Both cases came from this circuit (United States v. Watts, 67 F.3d 790 (9th Cir.1995); Putra, 78 F.3d 1386 (9th Cir. 1996)) and both relied on Brady in holding that the district courts could not "rely on facts of which the defendant was acquitted." Watts, 67 F.3d at 797 (citing Brady, 928 F.2d at 851 & n. 12).

The Supreme Court reversed both cases, stating: "We therefore hold that a jury's verdict of acquittal does not prevent the sen-

tencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." Watts, ⸺ U.S. at ⸺, 117 S.Ct. at 638.

The Supreme Court not only reversed the two cases which relied on Brady; it reached beyond them to specifically reject Brady itself: "Thus, contrary to the Court of Appeals' assertion in Brady, ... the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty." Id. To the extent there was any doubt about Brady's lack of viability after Koon, there is none now.

■ Finally, we hold that where actual knowledge is judicially established by a guilty verdict for purposes of punishment and, therefore, is an uncontrovertible fact, there is no need for a defendant to relate it back at sentencing. To impose such a requirement confuses "telling all" with qualifying for acceptance of responsibility. These are two very different concepts. To require a defendant to parrot an established fact exalts form over substance. The fact that § 3553(f) contemplates the court's making its determination after the verdict supports the notion that the verdict, although part of the mix of information available to the judge, is not dispositive in and of itself. 18 U.S.C. § 3553(f) (" ... if the court finds at sentencing ..."). Consistent with the language of § 3553(f) and the different roles involved when determining guilt and imposing sentence, we hold that the safety valve requires a separate judicial determination of compliance which need not be consistent with a jury's findings.[4]

Having concluded that the district court may disagree with the jury for sentencing purposes under the circumstances described, we need not dwell long on the Government's

---

**3.** It is therefore not surprising that all other courts of appeals that have considered the issue permit judges to reconsider facts rejected by a jury's verdict. See United States v. Putra, 78 F.3d 1386, 1390–94 (9th Cir.1996) (Wallace, C.J., dissenting) (listing cases of other courts of appeals holding the opposite of Brady ), pet. for cert. filed, 64 U.S.L.W. 3808 (U.S. May 23, 1996) (No. 95–1906); see also United States v. Coleman, 947 F.2d 1424, 1428–29 (10th Cir.1991), cert. denied, 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992); United States v. Duncan, 918 F.2d 647, 652 (6th Cir.1990), cert. denied, 500 U.S. 933,

111 S.Ct. 2055, 114 L.Ed.2d 461 (1991); United States v. Juarez–Ortega, 866 F.2d 747, 749 (5th Cir.1989).

**4.** Moreover, the verdict in this case was the result of a jury finding based on circumstantial evidence; there was no direct evidence of Sherpa's knowledge. The evidence, as the district court observed, was sufficient to warrant a conviction, but the conviction does not foreclose a finding that the defendant truly was without knowledge of drugs in the suitcase. As dis-

argument that his finding was so factually unsupported as to be clearly erroneous. It is clear that Sherpa provided the authorities with substantial information concerning the offense, including the names of those involved abroad. Indeed, only the truthfulness of Sherpa's claimed ignorance regarding the hidden drugs is disputed. As to that, it is apparent that the district court believed that Sherpa had shown, by a preponderance of the evidence, *Ajugwo*, 82 F.3d at 929, that he was being truthful.

Judge Hupp recognized that Sherpa's crime "causes extraordinar[ily] serious consequences," but he found Sherpa to be a "relatively unsophisticated man ... from a relatively unsophisticated culture," who had never been in the narcotics trade or had any connection to it. He found Sherpa did not know he was carrying heroin or its value. The record supports Judge Hupp's conclusion that Sherpa was culturally sheltered in such a way as to prevent his awareness of the questionable nature of his task.[5]

This being so, we affirm the district court's decision to apply the safety valve.

AFFIRMED.

cussed, the two findings are not necessarily inconsistent; hence, the district court has discretion to find Sherpa truthful at sentencing. The district court at sentencing is no longer concerned with the sufficiency of the verdict but, rather, with the *defendant's* perception of his knowledge and whether the judge believes that the defendant has truthfully conveyed that perception. Section 3553(f) does not repose the authority to so find in the jury, but with the judge.

**5.** The district court denied a motion by defendant to present expert testimony concerning Sherpa's religious beliefs and Nepali culture, including Buddhist beliefs in reincarnation and punishment for sinful acts, lack of knowledge of West-

ern culture or of drug trafficking among the Nepalese, and neighborly obligation in Sherpa culture. The expert would also have corroborated Sherpa's testimony that the small spoon he was carrying was a "naptul," a device for cleaning the ears, and not a narcotics spoon, as the Government alleged. The spoon alone was an important piece of circumstantial evidence against Sherpa. (No direct evidence of Sherpa's knowledge regarding the drugs was presented.) While the court's decision to exclude the expert testimony was not an abuse of discretion, *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir.), *cert. denied*, 502 U.S. 911, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991), it is clear that the district judge was privy to information not shared by the jury that permitted him to assess the case against Sherpa differently for sentencing purposes.