FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 25, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GIOVANNI MONTIJO-DOMINGUEZ,

    Defendant - Appellant.

No. 18-2008
(D.C. No. 1:14-CR-03758-JCH-2)
(D.N.M.)

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LUIS MENDOZA-ALARCON,

    Defendant - Appellant.

No. 18-2036
(D.C. No. 1:14-CR-03758-JCH-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **KELLY**, and **EID**, Circuit Judges.[**]
_____

---

[*] This panel previously determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case has therefore been submitted without oral argument.

[**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendants-Appellants Luis Mendoza-Alarcon and Giovanni Montijo-Dominguez were convicted of conspiracy to possess with intent to distribute cocaine. 21 U.S.C. § 846. Mr. Mendoza was sentenced to 144 months' imprisonment and five years' supervised release; Mr. Montijo was sentenced to 120 months' imprisonment and five years' supervised release. They now appeal from the district court's denial of their motions for judgment of acquittal, Fed. R. Crim. P. 29, and from the district court's refusal, upon the jury's request, to clarify a jury instruction relating to the definition of a criminal conspiracy.[1] Separately, Mr. Montijo appeals from the district court's finding him ineligible to receive the "safety valve" under 18 U.S.C. § 3553(f) and the corresponding Guideline reduction under U.S.S.G. § 5C1.2(a)(5) for a sentence below the mandatory minimum.

We consolidate their appeals for the purposes of this opinion in light of their interrelated nature. Fed. R. App. P. 3(b)(2). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

---

[1] Although Mr. Montijo did not raise this latter claim in his opening brief, the Clerk of the Court granted his request to join and adopt the Identified Issues in Mr. Mendoza's opening and reply briefs. Order, United States v. Montijo-Dominguez, No. 18-2008 (Nov. 15, 2018); Order, United States v. Montijo-Dominguez, No. 18-2008 (Jan. 4, 2019).

## Background

According to Mr. Mendoza, Lazaro Mendoza-Dominguez ("Lazaro") asked him if he would be interested in buying Lazaro's house in Santa Fe, New Mexico. 3 R. 1367–69; 1 Supp. R. Exs. H1, H2 & H3 (pp. 501–503).[2] Mr. Mendoza expressed interest, but their negotiations took a turn when Lazaro told Mr. Mendoza to expect a call from persons who would give him instructions to purchase $250,000 worth of cocaine. 3 R. 1375–76, 1383. The caller would refer to "Sergio from Cuauhtemoc" and use code words "paint" and "invoices." Id. at 1376. Lazaro instructed Mr. Mendoza to deliver the purchased narcotics to Lazaro's garage at his home. Id. at 1378. Mr. Mendoza claims Lazaro made clear that his compliance ensured Mr. Mendoza's daughter in Mexico would not be kidnapped or tortured. Id. at 1375–76.

In the meantime, Homeland Security Investigations (HSI) agents had learned that a man named "Leche" was interested in purchasing large quantities of cocaine. Id. at 777. Using the code words "white paint," undercover HSI agents called "Leche," whom they later learned was Mr. Mendoza, to coordinate a reverse sting operation where Mr. Mendoza would purchase six kilograms of cocaine for $150,000. Id. at 903–04, 951, 1031–32. Mr. Mendoza agreed to deliver the money at a Walmart parking lot in Albuquerque, New Mexico. Id. at 280. On the morning of the scheduled transaction, Mr. Mendoza asserts he attempted to call his friend, but he reached his friend's brother, Mr. Montijo, instead. Id. at 1416. He told Mr. Montijo about needing to give drug cartel

---

[2] Citations refer to the record in Case No. 18-2036 unless otherwise indicated.

members his life savings, but he claimed not to have told Mr. Montijo that the transaction involved narcotics. Id. at 1421. Mr. Mendoza asked Mr. Montijo to accompany him, and he testified that because he was too upset to drive, Mr. Montijo agreed to drive the pair to Albuquerque. Id. at 1417–18.

Mr. Mendoza and Mr. Montijo met the undercover agents in the Walmart parking lot. The agents testified that Mr. Montijo drove in a "countersurveillance" pattern in the parking lot, id. at 1207–10, that Mr. Mendoza used "coded" language when discussing the narcotics, id. at 971–72, 1134, and that Mr. Montijo was in close proximity to Mr. Mendoza during the narcotics discussion and did not appear ignorant of the subject matter. Id. at 978. Both Mr. Mendoza and Mr. Montijo asked the agents if they could complete the transaction elsewhere. Id. at 972, 1133–35. The agents declined, and Mr. Montijo handed cash, which was wrapped in clear plastic and in bundles, to them. Id. at 285–86, 1146. More undercover agents then arrived in a separate vehicle that purportedly contained cocaine. Id. at 287–88, 1426–27. Mr. Mendoza entered that vehicle, received a bundle purportedly containing cocaine, and expressed his comfort that the transaction had concluded, at which point the agents signaled other agents to arrest the pair. Id. at 285–87; 1150. Mr. Montijo ran upon hearing sirens and seeing the law enforcement officers and their lights, but he was later apprehended. Id. at 455–57, 1150–51, 1157–58.

Mr. Mendoza and Mr. Montijo were charged with conspiracy to possess with intent to distribute cocaine; Mr. Mendoza also was charged with carrying a firearm during and in relation to a drug trafficking crime. 1 R. 34–38. Mr. Mendoza and Mr.

4

Montijo offered an affirmative defense of duress, 3 R. 212–13, 1994–97, and Mr. Montijo

also argued he believed the transaction involved only an extortion payment, not narcotics.

Id. at 218.

The district court's conspiracy instruction stated, in part:

A conspiracy is an agreement between two or more persons to accomplish an
unlawful purpose. It is a kind of "partnership in criminal purposes" in which
each member becomes the agent or partner of every other member.
. . .
[T]he evidence must show that the members of the alleged conspiracy came
to a mutual understanding to try to accomplish a common and unlawful plan.

1 R. 282; see also Tenth Cir. Crim. Pattern Jury Instr. § 2.87. During deliberations, the

jury sent a note to the judge, which read, "Dear Judge, 1) pg 6 of instructions — 2 or

more persons agreed to possess[.] Who can be the 2 people — agents, defendants, etc.?"

1 R. 301. Mr. Mendoza's counsel advised the court:

[W]e talked among ourselves. And at the least, I believe, our viewpoint is
the instruction stands on its own. There's no reason to supplement it with an
additional answer. I can see the confusion, especially when it comes to the
agents. But nonetheless, I submit that the instruction is complete.

3 R. 2030–31. The government responded that "in the federal law . . . it can be anyone,

and that the other people who are in the conspiracy don't need to be genuine

members. . . . So the answer to the question is yes, the two people can be anyone." Id. at

2031. Mr. Mendoza's counsel then reiterated that "I don't think there is a gap in the

instruction that needs to be filled. And my response is that the jury should be told, You

must rely on the instruction as given." Id. at 2032. Mr. Montijo's counsel added that

"the answer is in the instruction." Id. At 2033. The court ultimately responded to the

5

jury's note by telling them, "You must rely on the court's instructions as written."  1 R. 303; 3 R. 2034.

The jury found both Mr. Mendoza and Mr. Montijo guilty of narcotics conspiracy. Id. at 304.  It acquitted Mr. Mendoza of the weapons charge.  Id.  Mr. Montijo then moved for a judgment of acquittal notwithstanding the verdict, or, in the alternative, a new trial.[3]  See United States v. Montijo-Dominguez, No. 18-2008, at 2 R. 100–08.  The court denied his motion and found there was sufficient evidence to support the jury's verdict.  Montijo-Dominguez, No. 18-2008, at 1 R. 64.  Mr. Montijo also objected to his Presentence Report.  Montijo-Dominguez, No. 18-2008, at 2 R. 112–23.  The PSR did not recommend a sentence below the mandatory minimum pursuant to § 3553(f) and U.S.S.G. § 5C1.2(a)(5), but it did recommend a two-level enhancement for obstruction of justice.  Montijo-Dominguez, No. 18-2008, at 3 R. 8–9.  Mr. Montijo argued that he had provided at various times all the information he had and that the jury's verdict did not preclude a finding that he testified truthfully.  Although the court sustained Mr. Montijo's objection to the obstruction enhancement, id. at 25, it disagreed with his safety-valve argument:

> I had no choice but to conclude that he is not eligible for the safety valve. Because if I concluded that the defendant had fully and completely and truthfully debriefed, I would essentially find contrary to the jury verdict.  I reviewed the jury instructions.  I could not reconcile the jury verdict with the safety valve.

---

[3]  Although Mr. Mendoza did not join in the motion, he orally moved for a judgment of acquittal following the conclusion of the government's case.  See 3 R. 1248.

Montijo-Dominguez, No. 18-2008, at 1 Supp. R. 6.

## Discussion

Both Mr. Mendoza and Mr. Montijo challenge the sufficiency of the evidence supporting a conspiracy to possess with intent to distribute cocaine and the district court's directing the jury to the instructions as given. Separately, Mr. Montijo challenges the district court's finding him ineligible for safety-valve treatment. We first address Mr. Mendoza's and Mr. Montijo's common claims before turning to Mr. Montijo's individual claim.

### A.     Mr. Mendoza and Mr. Montijo Invited Error and Are Precluded from Challenging the District Court's Supplemental Jury Instruction

This court ordinarily reviews a district court's decision to supplement its jury instructions for abuse of discretion, United States v. Arias-Santos, 39 F.3d 1070, 1075 (10th Cir. 1994), but the defendants did not object to the district court's supplemental instruction. Therefore, as recognized by the defendants, our review is for plain error. United States v. Thompson, 866 F.3d 1149, 1163 (10th Cir. 2017). Reversal is warranted under a plain error standard if (1) the district court erred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732 (1993).

The crux of the defendants' argument is that the jury's note demonstrated its confusion and possibly erroneous belief that a defendant could be convicted of a conspiracy solely with a government agent. Mendoza Aplt. Br. at 31. In addition, the

defendants assert that the district court's response was "plainly inadequate" to correct any misunderstanding. Id. The government contests any error, let alone plain error, because the district court referred the jury to the adequate instructions, and because defense counsel endorsed the jury instructions below, thus inviting any error. Mendoza Aplee. Br. at 12, 15–17. Because the district court's error, if any there be, was invited, we need not reach plain-error analysis, and we will not disturb the district court's decision on handling the jury's query.

Mr. Mendoza and Mr. Montijo are precluded from challenging the court's supplemental instruction on appeal given the invited error doctrine. A party invites error, thereby intentionally waiving an issue, when he "attempt[s] to 'induce the district court to do anything it would not otherwise have done,'" or "affirmatively approv[es]" the court's decision. United States v. Rodebaugh, 798 F.3d 1281, 1304 (10th Cir. 2015) (quoting United States v. Morrison, 771 F.3d 687, 694 (10th Cir. 2014), then United States v. Cornelius, 696 F.3d 1307, 1319 (10th Cir. 2012)). We have also found invited error where a party's "argument on appeal is a complete reversal from the position [that party] sought to and did assert" below. United States v. LaHue, 261 F.3d 993, 1013 (10th Cir. 2001).

Mr. Mendoza and Mr. Montijo suggest that the doctrine should not apply, as the government also contributed to the district court's error. Mendoza Reply Br. at 17; see United States v. Barrow, 118 F.3d 482, 490–91 (6th Cir. 1997). We are not persuaded. Here, trial counsel for both Mr. Mendoza and Mr. Montijo endorsed the instruction as delivered and argued successfully against further explanation. See Rodebaugh, 798 F.3d

8

at 1304. By explicitly endorsing the jury instructions and arguing against further explanation, Mr. Mendoza and Mr. Montijo forfeited their right to challenge them on appeal.

**B.     Sufficient Evidence Supported an Agreement Between the Defendants to Distribute Cocaine**

Sufficiency of evidence claims are subject to de novo review, and we view the evidence in the light most favorable to the government. Rodebaugh, 798 F.3d at 1296. Reversal is warranted only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id.

Mr. Mendoza and Mr. Montijo argue that the government's evidence at best demonstrated a conspiracy to possess, not distribute, cocaine. Lazaro arranged that Mr. Mendoza would deposit the purchased cocaine in Lazaro's garage. According to Mr. Mendoza and Mr. Montijo, such a "transfer" of cocaine is different from distribution. Mendoza Aplt. Br. at 50. Further, Mr. Mendoza and Mr. Montijo claim Mr. Montijo was not involved in the transaction until the day of the arrest,[4] and that there was no evidence that he knew about the cocaine or shared a goal to distribute cocaine. Id. at 51; Montijo Aplt. Br. at 26–27. The government counters that: (1) the quantity of cocaine involved created an inference of an intent to distribute, (2) there was testimony as to Mr. Mendoza's and Mr. Montijo's apparent expertise in narcotics trafficking, (3) the

---

[4] The Tenth Circuit Criminal Pattern Jury Instruction § 2.87, given at trial, properly states that "[a] person may belong to a conspiracy for a brief period of time or play a minor role." Tenth Cir. Crim. Pattern Jury Instr. § 2.87; 1 R. 283.

scheduled delivery to Lazaro's garage satisfies the element of intent to distribute, and (4) the participation of both defendants in the conversation with undercover agents established a common purpose to distribute. Mendoza Aplee. Br. at 21–26; see also Montijo Aplee. Br. at 13–14.

The parties generally agree as to the law. A defendant cannot conspire with another merely by way of his knowledge of the other individual's unlawful intent. Direct Sales Co. v. United States, 319 U.S. 703, 714 (1943). Rather, the co-conspirators must share a common objective, or "common purpose or design." United States v. Evans, 970 F.2d 663, 669 (10th Cir. 1992). The parties also agree that conspiracy to possess does not equate to a conspiracy to distribute narcotics. Id. However, Mr. Mendoza and Mr. Montijo rely on United States v. Ivy, 83 F.3d 1266 (10th Cir. 1996), to argue that a "common purpose" exists only when the conspirators shared a profit motive. Mendoza Aplt. Br. at 48. Yet the profit motive language in Ivy merely distinguishes end-user buyers, who cannot be guilty of conspiring to distribute narcotics, with sellers (the "buyer-seller" rule). Ivy, 83 F.3d at 1285–86. And, although the district court did not instruct on distribution, "possess with intent to distribute" means possession "with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction." Tenth Cir. Crim. Pattern Jury Instr. § 2.85; United States v. Knight, 659 F.3d 1285, 1293 (10th Cir. 2011). Accordingly, it is immaterial to the defense that Mr. Mendoza intended only to transfer possession of the cocaine to Lazaro.

10

Contrary to Mr. Mendoza's and Mr. Montijo's assertions, there is enough evidence to support a common goal of distributing the six kilograms of cocaine. First, although the distribution-quantity of narcotics alone is insufficient to support the jury's apparent finding, United States v. Levario, 877 F.2d 1483, 1486 (10th Cir. 1989), abrogated on other grounds by Gozlon-Peretz v. United States, 498 U.S. 395, 403 n.7 (1991), a jury may permissibly infer intent to distribute from that evidence. United States v. Pulido-Jacobo, 377 F.3d 1124, 1131 (10th Cir. 2004). In addition, the jury heard testimony that Mr. Mendoza spoke to the agents about a "next time," a statement consistent with an intended narcotics arrangement, not extortion payments. 3 R. 980. There was also testimony that Mr. Montijo engaged in the conversation with the government agents, such that they believed him to be an experienced drug trafficker, id. at 969–70, 1133, and that he attempted to flee at the first sight of identifiable officers. Id. at 1150–51, 1157–58. Although the jurors heard contrary testimony that Mr. Montijo had no knowledge that the transaction involved narcotics, it was within their province to credit one of two conflicting accounts. See United States v. Pikyavit, 527 F.3d 1126, 1130 (10th Cir. 2008). Similarly, although Mr. Mendoza explained that he and Mr. Montijo drove around the parking lot because of a misunderstanding as to the meeting spot, 3 R. 1424, the agents described their driving as reflecting a "countersurveillance" pattern. See id. at 1207–10. The jury thus heard (and credited) evidence that Mr. Montijo was both aware of the nature of the transaction and was intimately involved. Such evidence was sufficient to support a finding that Mr. Mendoza and Mr. Montijo conspired to possess with an intent to distribute large quantities of cocaine.

11

**C.** **The District Court Properly Denied Mr. Montijo Safety Valve Treatment Under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2**

This court reviews a district court's denial of safety-valve relief for clear error, United States v. Hargrove, 911 F.3d 1306, 1325 (10th Cir. 2019), and it reviews challenges to the district court's interpretation of the scope of § 3553(f) and U.S.S.G. § 5C1.2 de novo. United States v. Stephenson, 452 F.3d 1173, 1180 (10th Cir. 2006). The government argues for plain error review, contending that Mr. Montijo made a different argument before the district court, namely that he had provided complete and truthful testimony notwithstanding the verdict. Montijo Aplee. Br. at 20–21. We have reviewed the arguments below and conclude that Mr. Montijo did argue that a jury's verdict should not have preclusive effect on safety-valve eligibility. Accordingly, we review the district court's denial of safety-valve relief for clear error, and, to the extent Mr. Montijo argues that the district court misunderstood the applicable sentencing statutes, we review its interpretation de novo.

Mr. Montijo points to the court's statement that "if [it] concluded that the defendant had fully and completely and truthfully debriefed, [it] would essentially find contrary to the jury verdict." He argues that a jury's finding against a defendant does not foreclose relief under § 3553(f), even when the defendant maintains his innocence as to one or more elements of the underlying offense. He thus challenges the court's factual determination that Mr. Montijo's truthfulness was inconsistent with the jury's verdict, and the court's legal interpretation of § 3553(f) as precluding safety-valve relief upon a guilty jury verdict. In response, the government argues a finding that Mr. Montijo had

12

"truthfully provided to the Government all information and evidence the defendant has concerning the offense," § 3553(f)(5), would have been contrary to and entirely inconsistent with the jury's verdict, and that the denial of safety-valve relief was warranted.

1. **The District Court Did Not Clearly Err in Determining That the Jury Found Mr. Montijo's Testimony to be Untruthful**

Mr. Montijo argues that the jury could plausibly have credited his testimony as truthful despite its guilty verdict, stating that "it is impossible to determine what evidence the jury relied upon to determine the guilty verdict and the weight of the evidence that it placed upon Montijo's testimony." Montijo Aplt. Br. at 23. Yet he fails to explain how the jury could have credited his testimony that he had no knowledge of the nature of the transaction, yet still convict him of knowingly conspiring with Mr. Mendoza. Instead, the jury necessarily must have found that Mr. Montijo knowingly participated in a conspiracy with Mr. Mendoza. Accordingly, the district court did not clearly err in its finding that the jury found his testimony to be untruthful.

2. **The District Court Properly Interpreted § 3553(f)**

Mr. Montijo next argues that the district court committed legal error when it stated that, despite its reservations about Mr. Montijo's guilty verdict, safety-valve relief would be "contrary to the jury verdict." According to Mr. Montijo, the court's statement evinced its misunderstanding that § 3553(f) required a finding by the jury, not the judge, of Mr. Montijo's eligibility for safety-valve treatment. Montijo Aplt. Br. at 16. The

13

government counters that a judicial finding of Mr. Montijo's truthfulness would have impermissibly contradicted the jury's verdict. Montijo Aplee. Br. at 22–24.

Mr. Montijo relies heavily on a Ninth Circuit case, United States v. Sherpa, 110 F.3d 656 (9th Cir. 1996), which allowed a district court to apply safety-valve relief notwithstanding a jury's finding that a defendant testified untruthfully. Montijo Aplt. Br. at 18–19, 21–22. In Sherpa, the jury found a purportedly ignorant defendant guilty for knowingly possessing heroin with intent to distribute and for knowingly importing heroin. Sherpa, 110 F.3d at 659. Nevertheless, the Ninth Circuit upheld the district court's decision to apply safety-valve relief, holding that "the safety valve requires a separate judicial determination of compliance which need not be consistent with a jury's findings." Id. at 662.

Our circuit's case law diverges from that of the Ninth Circuit. Contrary to the holding in Sherpa, we held in United States v. De La Torre that "[n]o reasonable defendant could claim safety-valve eligibility based on trial testimony that necessarily contradicts the conviction itself." 599 F.3d 1198, 1206 (10th Cir. 2010). Here, Mr. Montijo denied his involvement in a conspiracy both on the witness stand and during conversations with the government. See Montijo-Dominguez, No. 18-2008, at 2 R. 169–71; id. at 4 R. 1836. Nevertheless, the jury found him guilty of knowing participation in the conspiracy. Thus, the district court could not have granted safety-valve relief without directly undermining the jury's verdict that he knowingly conspired with Mr. Mendoza.

14

We therefore uphold the district court's denial of safety-valve relief.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge