**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tobias VALENCIA, Defendant–**
**Appellant.**

No. 01–1212.

United States Court of Appeals,
Sixth Circuit.

Jan. 8, 2003.

———

Before MOORE, COLE, Circuit Judges, and SARGUS, District Judge.*

OPINION

COLE, Circuit Judge.

A jury convicted defendant-appellant Tobias Valencia of one count of conspiracy to possess with intent to distribute methamphetamine and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The jury found beyond a reasonable doubt that the conspiracy involved more than 500 grams of methamphetamine. Valencia now appeals the verdict, sentence and judgment, based on the district court's refusal to include on the verdict form provided to the jury an additional interrogatory as to whether the conspiracy involved 500 grams or less of methamphetamine. For the following reasons, we AFFIRM the judgment of the district court.

## I. BACKGROUND

In July of 2000, J. Isabel Sandoval Barajas contacted Tobias Valencia to arrange a visit to Valencia's home in Chicago to collect $3,000.00 that Valencia owed Barajas from a land purchase in Mexico years earlier. Shortly after arranging the visit, Barajas was contacted by a man named Rafa about performing an "errand" during his visit with Valencia in Chicago. Barajas

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

agreed to travel from Washington to Chicago for the sum of $2,000.00. On the day before he was to leave for Chicago, Rafa and Barajas met. Rafa took Barajas's car for a number of hours. When Rafa returned, he brought Barajas to meet Armando Evangelista, who was waiting with Barajas's car. Rafa told Barajas that Evangelista would be traveling with him to Chicago. Prior to leaving, Rafa advised Evangelista, but not Barajas, that there were drugs hidden in the gas tank of Barajas's car. The following morning, Barajas and Evangelista left Washington and drove to Chicago. Upon arriving in Chicago, the men contacted Valencia.

The following morning, July 14, 2000, the men traveled from Chicago to Lansing, Michigan in Valencia's truck and Barajas's car. In Lansing, Barajas and Valencia delivered Barajas's car to David James Kenney at his motorcycle shop. Approximately two hours later, Kenney returned Barajas's car to Barajas and Valencia, and informed them that the methamphetamine shipment had been soaked in gasoline and significantly damaged. Barajas, Evangelista, and Valencia returned to Chicago. On July 16, 2000, a confidential informant notified DEA agents that Kenney was in possession of a large amount of methamphetamine.

On July 17, 2000, Barajas, Evangelista, and Valencia returned to Lansing and discussed the problem with the drugs with Kenney. During this discussion, Kenney's shop was under surveillance by DEA and FBI agents. Kenney explained that he wanted to remove the drugs from their packaging to dry them out. After some deliberation, the drugs were placed in the bed of a pickup truck at Kenney's shop to dry.

That night, after the three men left the shop, the confidential informant initiated a purchase of methamphetamine. While making the purchase, the informant saw seven packages of methamphetamine that Kenney told him were to be removed from the packaging to dry overnight. The informant made the purchase and left.

The next morning, the three men traveled to Kenney's residence but did not find him home. After waiting for some time, they decided to return to Chicago. Shortly after leaving Kenny's residence, the trio was stopped by law enforcement agents and all three men were arrested. A search warrant was also executed on Kenney's shop. In addition to finding several items indicating an intention to distribute drugs, agents confiscated six piles of dry methamphetamine located on a board in the bed of a pickup truck together having a weight of 1,278 grams, and another small bag of methamphetamine that was saturated with gasoline weighing 384 grams. Including the methamphetamine purchased by the informant, the total weight of the confiscated drugs was 2,280 grams.

Valencia, Barajas, and Evangelista were subsequently charged with conspiracy to possess with intent to distribute, and to distribute 500 grams or more of a mixture containing methamphetamine pursuant to 21 U.S.C §§ 841(a)(1) and 846. Barajas and Evangelista executed plea agreements in exchange for their testimony and cooperation.

Valencia was tried before a jury in October 2000. At trial, Valencia made multiple objections to the wording of the verdict form. In particular, Valencia requested that the verdict form include an interrogatory as to whether the jury found that the conspiracy involved less then 500 grams of methamphetamine. The district court ultimately refused to alter the proposed verdict form to accommodate Valencia's objec-

tion, finding that the proposed verdict form was properly designed to require the jury to make a finding as to drug quantity beyond a reasonable doubt. The verdict form provided to the jury at the conclusion of Valencia's trial read:

1. As to the charge that the defendant, Tobias Valencia, was engaged in a conspiracy to distribute methamphetamine, we, the jury, unanimously find the defendant, Tobias Valencia:

_____Not Guilty _____Guilty

**If your answer is "Not Guilty," your foreperson should date and sign this verdict.**

**If your answer is "Guilty," you must proceed to question number 2.**

2. Do you unanimously find beyond a reasonable doubt that the defendant, Tobias Valencia, was involved with the following amount of controlled substances:

500 grams or more of methamphetamine mixture: _____ No _____ Yes

Valencia was convicted on October 3, 2000. On January 30, 2001, Valencia was sentenced to serve 188 months in prison to be followed by five years supervised release, and he was required to pay a fine of $3,340.00 and a special assessment of $100.

On appeal, Valencia claims that the district court improperly refused to provide a lesser-included-offense instruction. In particular, Valencia argues that the crime of conspiracy to possess with intent to distribute and to distribute less than 500 grams of methamphetamine is a lesser included offense of the charge against him— conspiracy to possess with intent to distribute 500 or more grams of methamphetamine. Further, Valencia argues that he was denied a fair trial by the district court's refusal to give such an instruction. We find that because Valencia never requested a lesser-included-offense instruc-

tion, he cannot demonstrate reversible error.

## II. ANALYSIS

■ Valencia never requested that the district court provide the jury with a lesser-included-offense instruction; nor did Valencia object to the jury instructions given by the trial court. Rather, Valencia strenuously objected to the wording of the verdict form. We must, therefore, reject Valencia's argument on appeal that he was entitled to a lesser-included-offense instruction in this case.

Where a "defendant neither requested nor submitted a lesser-included-offense instruction, and did not object to the instructions given by the trial judge, the jury instructions are reviewable only for plain error." *United States v. Donathan,* 65 F.3d 537, 540 (6th Cir.1995); *see also* FED. R.CRIM. P. 52. To establish plain error, Valencia must show "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected [his] substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Modena,* 302 F.3d 626, 630 (6th Cir.2002). Valencia cannot establish these four elements.

First, no error occurred in the district court. A criminal defendant is entitled to a lesser-included-offense instruction when: "(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." *United States v. Colon,* 268 F.3d 367, 373 (6th Cir.2001). In the present case, Valencia never requested a lesser-included-offense instruction. Because Valencia cannot satisfy the first prong of *Colon,* he was not entitled to a lesser-included-offense instruction and we need not address the other prongs of the *Colon* test. Accordingly, we cannot find that an error—much less a plain or obvious error—occurred when the district court did not give a lesser-included-offense instruction in this case.

■ Even assuming that an error occurred in the district court, and that this error was plain or obvious, Valencia cannot demonstrate that the error affected his substantial rights or that the fairness, integrity, or public reputation of the judicial proceedings was seriously affected. The verdict form used by the district court accomplished precisely what Valencia sought to do through his proposed additional interrogatory. Valencia wanted the jury to have the option of finding that he was guilty of participating in the methamphetamine conspiracy but only of conspiring with respect to an amount less than 500 grams. The verdict form required the jury to make such a finding.

The verdict form first asked whether Valencia was guilty of conspiracy at all and provided the jury with choices of "yes" and "no." If the jury answered the first question in the negative, it would have found Valencia not guilty. If the jury answered the first question affirmatively, the jury was then asked to determine whether the conspiracy involved 500 grams or more of methamphetamine. In particular, the verdict form required the jury to answer the following interrogatory:

Do you unanimously find beyond a reasonable doubt that the defendant, Tobias Valencia, was involved with the following amount of controlled substances:

500 grams or more of methamphetamine mixture: _____ No _____ Yes

Thus, the jury was provided with choices of "yes" and "no." If the jury marked "no" in response to this second question, such a response would have indicated that the jury found that the conspiracy involved zero to 499 grams of methamphetamine, or "less than 500 grams of methamphetamine." To include the interrogatory requested by defense counsel would have, in effect, required the jury to find Valencia not guilty beyond a reasonable doubt. Accordingly, the verdict form in this case was appropriate and Valencia's substantial rights were not prejudiced under these circumstances.

We note that this case does not present a problem under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* requires that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Assuming *arguendo* that *Apprendi* applies in the present case, the district court required the jury to make a determination of drug quantity beyond a reasonable doubt in the present case, which satisfies the *Apprendi* requirement.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of district court.