**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0498n.06
Filed: July 17, 2006

**No. 04-1159**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| TOBIAS VALENCIA, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Tobias Valencia, a federal prisoner convicted of conspiracy to possess with intent to distribute and to distribute 500 or more grams of a mixture containing methamphetamine, appeals the district court's denial of his motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. There are three issues on appeal: first, whether Valencia's trial counsel was constitutionally ineffective for failing to adequately investigate the methamphetamine involved in the drug transaction for which Valencia was found guilty; second, whether Valencia's trial counsel was constitutionally ineffective for failing to request a lesser-included-offense instruction; and third, whether the district court erred in denying Valencia's § 2255 motion without holding an evidentiary hearing. For the following reasons, we affirm the district court's denial of Valencia's motion.

1

I.

The facts of the case are not disputed and were set forth by this court in its opinion affirming

Valencia's conviction and sentence on direct appeal.

In July of 2000, J. Isabel Sandoval Barajas contacted Tobias Valencia to arrange a visit to Valencia's home in Chicago to collect $3,000.00 that Valencia owed Barajas from a land purchase in Mexico years earlier. Shortly after arranging the visit, Barajas was contacted by a man named Rafa about performing an "errand" during his visit with Valencia in Chicago. Barajas agreed to travel from Washington to Chicago for the sum of $2,000.00. On the day before he was to leave for Chicago, Rafa and Barajas met. Rafa took Barajas's car for a number of hours. When Rafa returned, he brought Barajas to meet Armando Evangelista, who was waiting with Barajas's car. Rafa told Barajas that Evangelista would be traveling with him to Chicago. Prior to leaving, Rafa advised Evangelista, but not Barajas, that there were drugs hidden in the gas tank of Barajas's car. The following morning, Barajas and Evangelista left Washington and drove to Chicago. Upon arriving in Chicago, the men contacted Valencia.

The following morning, July 14, 2000, the men traveled from Chicago to Lansing, Michigan in Valencia's truck and Barajas's car. In Lansing, Barajas and Valencia delivered Barajas's car to David James Kenney at his motorcycle shop. Approximately two hours later, Kenney returned Barajas's car to Barajas and Valencia, and informed them that the methamphetamine shipment had been soaked in gasoline and significantly damaged. Barajas, Evangelista, and Valencia returned to Chicago. On July 16, 2000, a confidential informant notified DEA agents that Kenney was in possession of a large amount of methamphetamine.

On July 17, 2000, Barajas, Evangelista, and Valencia returned to Lansing and discussed the problem with the drugs with Kenney. During this discussion, Kenney's shop was under surveillance by DEA and FBI agents. Kenney explained that he wanted to remove the drugs from their packaging to dry them out. After some deliberation, the drugs were placed in the bed of a pickup truck at Kenney's shop to dry.

That night, after the three men left the shop, the confidential informant initiated a purchase of methamphetamine. While making the purchase, the informant saw seven packages of methamphetamine that Kenney told him were to be removed from the packaging to dry overnight. The informant made the purchase and left.

The next morning, the three men traveled to Kenney's residence but did not find him home. After waiting for some time, they decided to return to Chicago. Shortly after leaving Kenny's residence, the trio was stopped by law enforcement

2

agents and all three men were arrested. A search warrant was also executed on Kenney's shop. In addition to finding several items indicating an intention to distribute drugs, agents confiscated six piles of dry methamphetamine located on a board in the bed of a pickup truck together having a weight of 1,278 grams, and another small bag of methamphetamine that was saturated with gasoline weighing 384 grams. Including the methamphetamine purchased by the informant, the total weight of the confiscated drugs was 2,280 grams.

*United States v. Valencia,*, 55 F. App'x 264, 265-66 (6th Cir. 2003).

Valencia, Barajas, and Evangelista were charged with one count of conspiracy to possess with intent to distribute and to distribute 500 grams or more of methamphetamine mixture in violation of 21 U.S.C. § 846. Barajas and Evangelista entered into plea agreements with the United States. Following a jury trial, Valencia was convicted on the single count charged.

At trial, Valencia objected to the proposed jury verdict form, which read as follows:

1. As to the charge that the defendant, Tobias Valencia, was engaged in a conspiracy to distribute methamphetamine, we, the jury, unanimously find the defendant, Tobias Valencia:

_____Not Guilty _____Guilty

If your answer is "Not Guilty," your foreperson should date and sign this verdict.

If your answer is "Guilty," you must proceed to question number 2.

2. Do you unanimously find beyond a reasonable doubt that the defendant, Tobias Valencia, was involved with the following amount of controlled substances:

500 grams or more of methamphetamine mixture: _____ No _____ Yes

Valencia requested that the verdict form include an interrogatory questioning whether the jury found that the conspiracy involved less than 500 grams of methamphetamine mixture. The district court rejected his request, finding that the proposed verdict form properly required the jury to find drug quantity beyond a reasonable doubt and provided the jury the opportunity to find Valencia guilty with respect to an amount less than 500 grams.

3

Following his conviction, Valencia was sentenced to imprisonment for 188 months, five years supervised release, a fine of $3,340 and a special assessment of $100. Valencia timely appealed his sentence and conviction. This court affirmed in an unpublished opinion. *Valencia*, 55 F. App'x 264. The Supreme Court denied certiorari. 538 U.S. 1047 (2003.)

Valencia, *pro se*, filed a § 2255 motion. His motion asserted three grounds for relief: first, he was denied effective assistance of counsel; second, he was improperly denied a reduction in his sentence for acceptance of responsibility; and third, his conviction and sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The district court denied Valencia's petition and denied issuance of a certificate of appealability. Valencia filed a notice of appeal and this court granted Valencia a certificate of appealability.

II.

On appeal of the denial of his § 2255 motion, Valencia challenges only the district court's denial of his claim of ineffective assistance of counsel and its decision that an evidentiary hearing was unwarranted with regard to this claim.[1] This court reviews the district court's denial of a § 2255 motion *de novo*. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). The district court's factual findings are reviewed for clear error. *Turner v. United States*, 183 F.3d 474, 476 (6th Cir. 1999). The district court's decision not to hold an evidentiary hearing is reviewed for an abuse of discretion. *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004).

To establish ineffective assistance of counsel, a defendant must show that: (1) his trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance exists if counsel's

---

[1]Thus, Valencia's claims regarding reduction for acceptance of responsibility and violation of *Apprendi* are abandoned. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

conduct "fell below an objective standard of reasonableness." *Id.* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. With regard to prejudice, a defendant must show with "a reasonable probability" that the result of the proceeding would have been different but for counsel's errors. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's performance must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Valencia first argues that trial counsel failed to thoroughly investigate the case because he did not arrange for independent laboratory tests to be performed on the drugs at issue. At trial, the government produced testimony from Fredrika Mary Laux, a forensic chemist with the Drug Enforcement Administration. Laux testified that the government provided her with seven seized bags of alleged drugs on which to perform testing. Six were similar in composition, while the seventh was soaked in gasoline. The total weight of the six bags was 1,278 grams. The weight of the gasoline-soaked seventh bag was 384.5 grams. Laux testified that testing performed on the bags confirmed that both the six bags and the seventh bag contained methamphetamine. After determining the relative purity of the bags, Laux concluded that the six bags contained 1,073 grams of pure methamphetamine, while the gasoline-soaked bag contained 173 grams of pure methamphetamine. Defense counsel only briefly cross-examined Laux, taking the opportunity to clarify two points: first, the relative weights of the six bags together and the seventh bag individually; and second, that the six bags did not appear to be affected by gasoline.

On appeal, Valencia maintains that defense counsel should have hired an independent expert to perform testing on the drugs, engaged in a more extensive cross-examination of Laux, and

5

produced a defense expert on the subject of the drugs. Although Valencia is equivocal on what exactly such independent tests and testimony would have established, Valencia maintains that such tests and testimony could have established two things: first, that the substance in question was amphetamine, as opposed to methamphetamine; and second, that the dry bags and wet bag of drugs were from different sources, which would allow a jury to conclude that Valencia only transported the one wet bag. Valencia did not argue to the district court, however, that trial counsel was ineffective for failing to test the drugs or further cross-examine Laux in order to determine if the bags could have been from different sources. Rather, Valencia only argued that such conduct constituted ineffective assistance because the substance in the bags was amphetamine, as opposed to methamphetamine. In general, the well-established principle that appellate courts do not address claims not properly presented to the district court extends to appeals from denials of habeas corpus petitions, *see Byrd v. Collins*, 209 F.3d 486, 538-39 (6th Cir. 2000); *Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir. 1987); and § 2255 motions, *see Caldwell v. United States*, 651 F.2d 429, 434 (6th Cir. 1981). We note that Valencia, now represented by counsel, was proceeding *pro se* when he filed his § 2255 motion and that English is not his first language. We therefore believe that this is one of those "exceptional cases" in which the defendant may "extend the issue of ineffective assistance of counsel, already raised below on [some] of his claims, to his [other] claims" on appeal. *See Weinberger v. United States*, 268 F.3d 346, 352 (6th Cir. 2001). Nonetheless, neither of Valencia's arguments regarding the drugs at issue entitle him to relief.

Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support

6

the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Defense counsel must therefore "make reasonable investigations or [] make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. But these decisions do not occur in a vacuum. As the Court said in *Strickland*, "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." 466 U.S. at 691. Valencia is therefore required to provide some evidence that trial counsel's decision not to have the drugs tested was unreasonable. Valencia's speculative assertions that the drugs may have been amphetamine and the bags may have been from different sources do not constitute such evidence. Moreover, Valencia provides this court with no insight into trial counsel's actual choice not to independently analyze the drugs.[2] In short, Valencia has failed to offer any basis on which to conclude that trial counsel's failure to test the drugs was unreasonable.

*Sims v. Livesay*, 970 F.2d 1575 (6th Cir. 1992), on which Valencia primarily relies, does not alter our conclusion. In *Sims*, this court held that the defendant's trial counsel was constitutionally ineffective for failing to perform independent forensic analysis on a piece of physical evidence. *Id.* at 1581. The defendant in *Sims* was on trial for murdering his wife, but he maintained at trial that his wife's shooting occurred accidentally when he tried to wrest a gun from her. *Id.* at 1576. A central issue in the case was whether the defendant's wife was shot from a distance, as the State maintained, or whether she was shot at close range when the defendant tried to take the gun from her, as he maintained. This court held that defense counsel was constitutionally ineffective for

---

[2]For example, Valencia does not claim that he told his trial counsel that the drugs were amphetamine or were from different sources, or that he even raised the possibility to counsel that the government's own analysis was erroneous in some way. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

7

failing to examine a quilt, which contained three bullet holes, found on the bed where defendant's wife was shot. *Id.* at 1581. In the abstract, *Sims* supports Valencia's argument that defense counsel should generally test physical evidence involved in a crime. The differences between the cases are critical, however. In *Sims*, "prior to trial [defense counsel] was in possession of an FBI report that should have alerted him to the significance of the quilt for the defense."[3] *Id.* at 1580. This report constituted evidence that counsel acted unreasonably in light of what he knew or should have known. No similar evidence is presented in this case. Moreover, the defendant in *Sims* told his trial counsel that the shooting was accidental, so the "FBI report presented the defense with a theory of the case that squared fully with [the defendant's] version of events." *Id.* at 1577, 1580. There is no similar allegation that Valencia told his trial counsel to test the drugs because they were not methamphetamine or not from the same source. Based on the evidence in the record, there is simply no indication that defense counsel had any reason to believe that the drugs were not methamphetamine or that the drug bags were not from the same source. In short, we reject Valencia's claim of ineffective assistance based on a failure to independently test the drugs, call a defense expert, or more extensively cross-examine Laux.

Valencia next argues that defense counsel was constitutionally ineffective for failing to request a lesser-included-offense instruction on the jury verdict form.[4] Specifically, Valencia

---

[3]The FBI had tested the quilt, and the relevant report indicated that gunpowder residue had been found on the quilt. *See Sims*, 970 F.2d at 1580. Because defense counsel knew that the State was going to call an expert to testify that the lack of powder marks on the victim indicated that she was shot from a distance, defense counsel should reasonably have known that the powder marks on the quilt were critical because the marks indicated that the quilt could have trapped the powder residue even at close range. *Id.*

[4]Here again, although Valencia did not make this precise argument to the district court, we conclude that he may extend the issue of ineffective assistance of counsel to this clam because of the unusual circumstances of this case.

maintains that conspiracy to possess with intent to distribute less than 500 grams of methamphetamine mixture, *see* 21 U.S.C. § 841(b)(1)(B)(viii) (50 grams or more of methamphetamine mixture), is a lesser-included offense of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine mixture, *see id.* § 841(b)(1)(A)(viii) (500 grams or more of methamphetamine mixture). "A criminal defendant is entitled to an instruction on a lesser-included-offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." *United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001); *see also* Fed. R. Crim. P. 31(c)(1) ("A defendant may be found guilty of . . . an offense necessarily included in the offense charged"). A defendant will only be entitled to the instruction if he makes two showings: "(1) the elements of the lesser offense are a subset of the elements of the charged offense; and (2) the evidence would allow a rational jury to find the defendant guilty of the lesser offense but not guilty of the charged offense." *Colon*, 268 F.3d at 373. In contrast, no instruction is warranted where "the lesser offense requires an element not required for the greater offense." *Id.* at 374.

"The Supreme Court has instructed that in making the determination of whether there is an identity of elements of a lesser and greater offense for purposes of determining whether a lesser-included offense instruction is appropriate, courts are to compare the statutory elements of the offenses in question." *Id.* at 375 (citing *Schmuck v. United States*, 489 U.S. 705, 716 (1989)). Therefore, if we reviewed the merits of Valencia's challenge, we would consider whether drug quantity is an "element" of the offenses here in question, and whether § 841(b)(1)(A) and

9

§ 841(b)(1)(B) are separate offenses or merely penalty provisions of the same offense, 21 U.S.C. § 841(a). These are thorny issues[5], and we need not resolve them here.

Even if trial counsel's failure to request a lesser-included-offense instruction constitutes deficient performance under *Strickland*, this deficient performance failed to have the required prejudicial effect on the proceedings. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."). On direct appeal, Valencia challenged the district court's decision to deny his request for a jury interrogatory, which would have asked the jury whether it found that the conspiracy involved less than 500 grams of methamphetamine mixture. Because the verdict form required the jury to find that Valencia's offense involved more than 500 grams, this court held, "The verdict form

---

[5]This court has previously held "that section 841(b) sets forth penalty provisions only and not separate 'lesser included' offenses." *United States v. Moreno*, 899 F.2d 465, 473 (6th Cir. 1990); *see also United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991) ("The quantity of contraband possessed is not an element of the offense, but is pertinent only to sentencing."); *United States v. Caldwell*, 176 F.3d 898, 900 (6th Cir. 1999) (same).

More recently, this court has stated that, in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), "the determination of drug quantity under § 841(b) must, when it subjects the defendant to an enhanced sentence, be considered an element of the offense rather than a sentencing factor." *United States v. Strayhorn*, 250 F.3d 462, 468 (6th Cir. 2001) (citing *United States v. Ramirez*, 242 F.3d 348, 351 (6th Cir. 2001) and *United States v. Flowal*, 234 F.3d 932, 938 (6th Cir. 2000)), *all overruled on other grounds by United States v. Leachman*, 309 F.3d 377, 381-83 (6th Cir. 2002); *see also United States v. Darwich*, 337 F.3d 645, 655 (6th Cir. 2003) ("[E]ach provision of § 841(b) provides for a different criminal offense with separate elements which all must be proved beyond a reasonable doubt when a defendant guilty of a [drug] conspiracy is sentenced in excess of the default statutory maximum.").

Finally, a distinct line of cases, which reject claims by defendants that their original indictments were subjected to unlawful variance or constructive amendment when the indictment alleged greater quantities of drugs under § 841(b) than the jury found beyond a reasonable doubt, have reasoned that the defendants were "merely convicted of a lesser-included offense and all the elements of the former necessarily include those of the latter." *United States v. Martinez*, 430 F.3d 317, 339-40 (6th Cir. 2005); *see also United States v. Newton*, 389 F.3d 631, 639 (6th Cir. 2004); *United States v. Solorio*, 337 F.3d 580, 590-91 (6th Cir. 2003); *United States v. Vazquez*, 49 F. App'x 550, 553 (6th Cir. 2002).

used by the district court accomplished precisely what Valencia sought to do through his proposed additional interrogatory." *Valencia*, 55 F. App'x at 267. This same reasoning applies to the claim that Valencia would have benefitted from a lesser-included-offense instruction.

The requirement that the lesser-included instruction be given "ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Beck v. Alabama*, 447 U.S. 625, 634 (1980). As the Supreme Court has explained, the requirement that a lesser-included-offense instruction be given stems from the need to give the jury a "third option" where it would otherwise be presented with an all-or-nothing choice. *See Schad v. Arizona*, 501 U.S. 624, 646-47 (1991) (examining cases). In this case, the jury had its "third option": the jury could have convicted Valencia of conspiracy to distribute methamphetamine but not found that the amount was greater than 500 grams. Although Valencia argues that the evidence supported this third option, the jury declined to choose it. On appeal, Valencia fails to articulate any meaningful difference between the interrogatory he actually requested and the hypothetical lesser-included-offense instruction now at issue. Thus, for the same reasons that this court held that no prejudice resulted from the district court's refusal to include the interrogatory on the verdict form, no prejudice resulted from counsel's failure to request a lesser-included-offense instruction.

Valencia's final argument is that the district court was required to hold an evidentiary hearing on the allegations in his § 2255 motion. A federal prisoner who files a motion under § 2255 challenging a federal conviction is entitled to a prompt hearing, unless the motion and the record of the case conclusively show that the prisoner is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). Pursuant to Rule 4, Rules Governing § 2255 Proceedings, the hearing is mandatory unless it "plainly appears from the motion, any attached exhibits, and the record of the

11

prior proceedings that the moving party is not entitled to relief," in which case the motion must be dismissed. "Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner*, 183 F.3d at 477. If the trial judge also hears the collateral proceedings, the judge may rely on his recollections of the trial in ruling on the collateral attack. *Smith*, 348 F.3d at 551.

The district court did not abuse its discretion when it denied an evidentiary hearing with regard to Valencia's claim of ineffective assistance based on counsel's failure to independently investigate the drugs.[6] Although Valencia stated in his petition that the drugs were not methamphetamine, this claim was clearly refuted by the on-the-record, uncontradicted testimony of Laux. As we have already noted with regard to this appeal, Valencia did not provide any specific allegation that would permit a conclusion that trial counsel was ineffective for not having the drugs independently tested. It is not enough for Valencia merely to "proclaim[] his innocence"; rather, he must provide some basis "to indicate that his counsel's performance was constitutionally infirm." *Turner*, 183 F.3d at 477. In short, although Valencia's petition may dispute the facts found by the jury, his arguments are entirely speculative and fail to create a factual issue regarding trial counsel's performance. His petition presents no issue requiring an evidentiary hearing.

III.

For the foregoing reasons, the district court's judgment is affirmed.

---

[6]Valencia does not argue on appeal that an evidentiary hearing was required with regard to his claim of ineffective assistance based on counsel's failure to request a lesser-included-offense instruction.

12