**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0642n.06
Filed: October 21, 2008

No. 07-5617

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA
    *Plaintiff-Appellee*,

    v.

RICHARD GLEN MILBURN
    *Defendant-Appellant*.

_____

On Appeal from the
United States District Court for
the Eastern District of Tennessee

Before: KENNEDY, SUTTON, and MCKEAGUE, Circuit Judges.

**KENNEDY, J.** Richard Milburn appeals his convictions for various drug- and firearm-related offenses. He raises three arguments on appeal: (1) venue is improper as to the drug and firearm offenses relating to his arrest in Georgia; (2) the variance between the quantity of marijuana charged and the amount determined in the jury's verdict on Count One is impermissible and should result in the dismissal of that count; and (3) the district court failed to consider fully all factors underlying the application of a reasonable sentence. For the following reasons, we AFFIRM the judgment of the district court.

## BACKGROUND

Milburn's multiple-count indictment and conviction was based on two somewhat independent series of events involving his narcotics dealings. Milburn was arrested at a hotel in Georgia on September 8, 2004, and on a separate occasion, Milburn was arrested at a gas station in Tennessee on December 1, 2005.

1

Milburn traveled to Georgia after leaving Tennessee with cash to purchase methamphetamine from a contact of Troy Ward, an acquaintance. J.A. at 312. Ward had done drugs at Milburn's house and Ward was involved with an associate of Milburn's by the name of Mark Saults. J.A. at 305. Saults had bought methamphetamine from and sold marijuana to Milburn. J.A. 181-83. In September of 2004, Milburn asked Ward to purchase methamphetamine in Georgia from a drug dealer known to Ward only as "Julio" and bring it back to Tennessee. J.A. at 310. Milburn met Ward in Baileyton, Tennessee–in the Eastern District of Tennessee–and gave Ward $5,400 in cash for the methamphetamine and $100 for gas money. J.A. at 308. Ward took that money to Georgia that night and gave Julio $4,200 of Milburn's cash to purchase a quarter pound of methamphetamine. J.A. at 311. Julio took the money and never returned. J.A. at 311. Ward then called Milburn, told him what happened with Julio, and indicated that he had found another source for methamphetamine. J.A. at 311-12. Milburn decided to go to Georgia from Tennessee himself with between $10,000 and $12,000 in cash to purchase more methamphetamine from Ward's contact. J.A. at 312. Milburn met Ward at the hotel and they were arrested. The police officers searched the room and Milburn's person and found 37.25 grams of methamphetamine, cash, three guns, and digital scales. Both Count Four, attempt to possess with the intent to distribute methamphetamine in violation of 21 U.S.C §§ 846 and 841(b)(1)(C) and 18 U.S.C. § 2, and Count Five, carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), arise out of this series of events.

Police arrested Milburn in Tennessee during a drug deal between Milburn and Saults on one side, and Thomas Turner on the other. Turner was a former drug trafficker who now worked for the police. J.A. at 276. Turner set up a deal to sell methamphetamine and marijuana to Saults, but Saults did not have the money to purchase the drugs, so Milburn agreed to buy the drugs. J.A. at

2

189-90. Saults would sell part of the drugs purchased by Milburn, and then Saults would use the proceeds to repay Milburn and they would split the profit. J.A. at 191. On December 1, 2005, Turner met with Saults and Milburn at a gas station in Boones Creek, Tennessee where the police were waiting. J.A. at 222. Turner gave the signal and the police arrested Saults and Milburn on the spot. J.A. at 223. In searching Milburn's pickup truck and his person, officers discovered methamphetamine, tens of thousands of dollars in cash, two guns, digital scales with drug residue, a methamphetamine pipe, methlsulfonal monohydrate (used to dilute methamphetamine), and a drug ledger. J.A. at 224-31. Count Six, attempt to possess with the intent to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D) and 18 U.S.C. § 2; Count Seven, attempt to possess with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and 18 U.S.C. § 2; Count Eight, possession with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C); and Count Nine, carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) all arose out of the events relating to Milburn's arrest in Tennessee.

Counts One and Two dealt with conspiracy to distribute and possession with the intent to distribute marijuana and methamphetamine, respectively, arising out of the events leading up to both arrests mentioned above–in addition to other dealings–between approximately January 1995 and December 13, 2005. J.A. at 46, 54. Count Ten, possession of an unregistered short barreled firearm in violation of 26 U.S.C. § 5861(d), came out of the discovery of a sawed-off shotgun during a lawful search of Milburn's house. The last count, Count Eleven, was for possessing contraband in prison.

In the district court, Defendant filed a motion to dismiss Counts Four and Five for lack of venue which the district court denied. J.A. at 71. Defendant's motion for judgment of acquittal for lack of venue was also denied by the district court. J.A. at 330. The district court also rejected Defendant's other arguments that Count One should be stricken, Counts Five and Nine should fall with Count One, and Defendant's sentence should be adjusted accordingly. J.A. at 336-37. Convicted as to Counts One and Two and Counts Four through Eleven, Defendant was sentenced to 480 months in prison, the statutory minimum. J.A. at 344.

## ANALYSIS

I.     Venue as to Counts Four and Five

Separate analyses guide the determination of whether venue is proper for Counts Four and Five. Count Five is for carrying a firearm during and in relation to a drug trafficking offense in violation of § 924(c). Its analysis must proceed under the framework of *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999) which held that venue is appropriate for a violation of § 924(c) wherever venue is appropriate as to the underlying continuing crime. 526 U.S. at 281. As for Count Four, the underlying continuing crime, *United States v. Cabrales*, 524 U.S. 1 (1998) held that venue is appropriate wherever the offense is "'begun, continued, or completed.'" 524 U.S. at 7 (quoting 18 U.S.C. § 3237(a)).

Defendant argues that venue for the Georgia offenses is improper where "[t]he alleged offenses took place many hundreds of miles from one another," "[m]ore than one full year separated the Georgia and Tennessee offenses," and "[a]side from the fact that both states' offenses involved generic drug charges, no other similarities existed." Def. Br. at 11. These arguments misconstrue the relationship the law focuses on for the purposes of venue as that between the charges brought

4

against Defendant, when the real issue in consideration of venue is the relationship between the place of the criminal behavior and the place of trial. Accordingly, Defendant's arguments fail where the facts establish that the crime of attempted possession with the intent to distribute began in the Eastern District of Tennessee with a meeting between Milburn and Ward.

*United States v. Zidell*, 323 F.3d 412 (6th Cir. 2003) controls here. In *Zidell*, the defendant lived in Dallas, Texas, but he had met with his associates in Memphis, he had induced his associates to travel from Memphis to Dallas on two occasions, and his associates had taken methamphetamine from the defendant in Dallas with the aim to sell the drugs received from the defendant in Memphis and then pay the defendant back with the proceeds before they were arrested prior to their arrival in Memphis. 323 F.3d at 423. The defendant was convicted of attempt to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, the same crime at issue here. He argued that venue was improper in the Western District of Tennessee since "he supplied the drugs in question solely in Texas[] and without traveling to Memphis." *Id.* at 422. The Sixth Circuit panel in *Zidell* rejected that argument, and instead looked at a broader scope of events, indicating that venue was established where the attempted distribution began in Memphis with the defendant's meeting with his associates, continued in Memphis because it was the point of departure for his associates, and terminated in Memphis since the defendant's associates intended to return there to sell the methamphetamine.[1] *Id* at 423. Similarly, in the instant case, Defendant met with Ward in

---

[1]The court in *Zidell* also held that since "[t]he effects of the attempted distribution, if successful, would have been felt in Memphis," venue was proper under a substantial contacts test. 323 F.3d at 423. While the court in *Zidell* seemingly analyzed substantial contacts as a sufficient, alternative ground on which to find venue, 323 F.3d at 423 (following an analysis of whether venue is proper under § 3237(a), the court wrote: "[m]ore generally, we have evaluated challenges to venue under a 'substantial contacts' test . . ."), other Sixth Circuit panels have determined whether an offense was begun, continued, or completed per § 3237(a) through the application of the substantial

the Eastern District of Tennessee, Ward departed from the Eastern District of Tennessee to purchase methamphetamine in Georgia, and Ward intended to return to the Eastern District of Tennessee to deliver the drugs to Defendant for distribution.

Because venue for the underlying offense–here drug trafficking–is appropriate in the Eastern District of Tennessee, venue is proper for Count Five, namely the carrying of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). *See Rodriguez-Moreno*, 526 U.S. at 281-82. *Rodriguez-Moreno* held that "[w]here venue is appropriate for the underlying crime"–in *Rodriguez-Moreno* the crime was kidnaping–so too is venue appropriate "for the § 924(c)(1) offense."[2] *Id*. Therefore, venue is not improper as to both Count Four and Count Five.

II.    Variance as to Count One

Count One charged Defendant with conspiracy to distribute and possession with the intent to distribute 1000 kilograms or more of marijuana. J.A. at 47. On the verdict form, the jury checked the "Guilty" blank as to Count One, but they also checked "100 kilograms or more but less than 1000 kilograms" as to the amount of marijuana. J.A. at 80. Defendant argues that since the count itself was for 1000 kilograms or more of marijuana but the amount determined by the jury was between

---

contacts test. *See United States v. Beddow*, 957 F.2d 1330, 1335-36 (6th Cir. 1992); *see generally United States v. Williams*, 788 F.2d 1213, 1215 (6th Cir. 1986)(holding that venue generally is evaluated under substantial contacts in the Sixth Circuit). Like the United States Supreme Court in *Cabrales*, we look only at *locus delicti*, determined from "'the nature of the crime alleged and the location of the act or acts constituting it,'" 524 U.S. at 7 (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)), which prescribes the constitutional minimums for venue of Article III, § 2, cl. 3 and the Sixth Amendment, and the statutory requirements of § 3237(a). 524 U.S. at 6-7.

[2]That *Rodriguez-Moreno* dealt with an underlying crime of violence–kidnaping–and the case before us deals with drug trafficking is a distinction without a difference as they are both continuing crimes that occur across geographic boundaries and § 924(c) makes carrying a gun a crime in relation to both.

6

100 and 1000 kilograms, there was a "fatal variance between pleading and proof . . . ." Def. Br. at

2. Defendant's argument has been foreclosed by *United States v. Solorio*, 337 F.3d 580 (2003).[3]

In *Solorio*, one count of the indictment alleged that the defendant "conspired to possess with

intent to distribute 5 kilograms of cocaine," but the jury found the defendant guilty of "conspiring

to possess with intent to distribute 500 grams of cocaine." 337 F.3d at 589. *Solorio* is "identical"

to *United States v. Vazquez*, 49 Fed. Appx. 550, 2002 WL 31367162 (6th Cir. 2002) (unpublished)

which *Solorio* relies upon.[4] *Solorio*, 337 F.3d at 591. In both cases, the indictment charged the

defendant with one count of conspiracy involving more than 5 kilograms under § 841(b)(1)(A); but

having found the defendant guilty of that count, the jury went on to specifically find that the

defendant conspired to distribute more than 500 grams but less than 5 kilograms of cocaine, which

"made out the requirements of § 841(b)(1)(B)." *Id.* Both courts held that this did not constitute a

prejudicial variance nor was it a constructive amendment, both of which might have called for

reversal of the district court. *Id.*

Nearly identically here, though Count One charged Defendant with one count of conspiracy

involving over 1000 kilograms of marijuana under § 841(b)(1)(A), the jury found that Defendant

---

[3]Defendant also argues that, where "'inconsistencies . . . indicate that the jury verdict was a product of irrationality,' the verdict must be set aside." Def. Br. at 23 (quoting *United States v. Johnson*, 223 F.3d 665, 675-76 (7th Cir. 2000)). However, *Johnson* dealt specifically with a death penalty statute and there are no inconsistencies in the jury findings here as there were in *Johnson* where two separate jury forms which had some of the exact same questions on both the jury marked with different answers. *Id.*

[4]Although *Solorio* relied upon *Vazquez*, an unpublished opinion, the precedential value of *Solorio* is not in question because its reasoning is sound and the case is cited favorably by *United States v. Martinez*, 430 U.S. F.3d 317 (6th Cir. 2005) (holding that the defendant could be convicted on a conspiracy count even where the indictment alleged greater quantities of narcotics under § 841(b)(1)(A) than found by the jury in its special verdict which corresponded to lesser penalties under § 841(b)(1)(B)).

conspired as to between 500 grams and 1000 kilograms of marijuana, making out the requirements under § 841(b)(1)(B). Then, as in *Solorio* and *Vazquez*, the jury merely convicted Defendant of a lesser offense necessarily included in the offense charged, permissible under Fed. R. Crim. P. 31(c)(1).[5] Defendant's ability to defend himself was left unaffected, which is the underlying concern of both variance and constructive amendment. *Id.* at 590.

III.    Sentencing

Defendant's remaining arguments concerning sentencing all rely upon vacating Count One. Counts Five and Nine, Defendant argues, must be invalidated because they are premised upon Count One and the sentence should be lowered accordingly. Since Count One remains, the 480-month statutory minimum stands. Remand for sentencing is inappropriate because the statutory minimum is mandatory and a district court is not permitted to depart below it. *See United States v. Hoosier*, 442 F.3d 939, 944 (6th Cir. 2006).

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[5]That rule reads: "A defendant may be found guilty of any of the following: (1) an offense necessarily included in the offense charged; (2) an attempt to commit the offence charged; or (3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right." Fed. R. Crim. P. 31(c).